HEALEY'S CASE.

Somerset.    Opinion December 1, 1924.

*Under the Workmen's Compensation Act, that compensation may be awarded to a dependent, it must appear that the employment of the decedent must have been the proximate cause of his death.*

In this case the evidence proves that the decedent's death resulted from the doing of something which his employment neither required nor expected him to do, and in a place where his employment did not take him, and to which his employers, if men of ordinary expeirence and sagacity, could not be expected to anticipate he would go, for the purpose of washing his hands.

On appeal.    On July 10, 1923, John Galvin, a nephew of claimant, an alleged dependent, was in the employ of the Great Northern Paper Company as clerk of a drive, and stationed temporarily at Rockwood on Moosehead Lake, opposite Kineo.    He occupied a desk in the office of the company in its storehouse situated near the water front and at the rear of the storehouse was a wharf.    On said July 10, he went to the wharf to wash his hands and presumably walked down the slip of the wharf to the water and slipped and fell into the lake and was drowned.    Compensation was awarded and from the affirming decree an appeal was taken.    Appellant based his appeal upon the contention that the accident did not arise out of and in course of his employment inasmuch as what the decedent was doing at the

time of the accident was something which his employment neither required him to do nor expected him to do. Appeal sustained. Decree reversed. Petition dismissed..

The case is sufficiently stated in the opinion.

*George E. Thompson,* for claimant.

*Louis C. Stearns,* for respondents.

SITTING: CORNISH, C. J., PHILBROOK, SPEAR, STURGIS, BARNES, JJ.

SPEAR, J. The pleadings in this case are regular in form and present all the issues in controversy. The allegations of fact are as follows:

First, that on the 10th day of July, 1923, while working as a clerk in the employ of the Great Northern Paper Company, at Rockwood, Maine, John T. Galvin received a personal injury by accident aris- ing out of and in course of his employment.

Second, said accident happened as follows: Had been handling some dirty material in the storehouse and went to the wharf to wash his hands, preparatory to doing other work when he fell in and was drowned.

Third, which resulted in an injury as follows: Death by drowning. The answer adequately traverses every material allegation.

The second allegation, as above noted, contains the only specification as to how the accident happened.

Under this allegation, the chairman made a finding of facts which, for a proper analysis, should be divided into two parts. The facts as stated in the first part that he "went down to the slip or wharf presumably to wash his hands" can be inferred and are within the terms of the specifications of the cause of the accident as averred in the second allegation. The facts as found in the second part, however, cannot be approved as they are based upon pure assumption and are contradictory of the cause of the accident as alleged in the second allegation. They are thus stated:

"The evidence clearly shows that Mr. Galvin was acting in the usual manner adopted by the employees of the Company with respect to answering a call of nature occurring during working hours at the storeroom, and while so conducting himself, he accidentally fell into the lake and was drowned. It is therefore found that the

accident which caused the death of Mr. Galvin arose out of and in course of his employment as a clerk in the Great Northern Paper Company."

This part of the finding seems to be based upon the endeavor, first, to show that it was "the usual manner," on the part of the employees to go from the place of defecation to the slip to wash their hands, and second to show that the decedent went from such place to the slip in accordance with that "usual manner."

The evidence, however, utterly fails to prove any such "usual manner," or custom and hence any observance by the decedent of a custom that did not exist. Upon the question of custom, Henry M. Chapman, the first witness called by the claimant, testified as follows: "I can't say that I ever saw anybody go down to the slip to wash their hands." "Q. Was it customary for men to walk down to the edge of the walk to do their work? A. No."

John M. Morrison, the second witness called by the claimant said on this point: "Q. Did you ever see anybody wash their hands off this slip before? A. No. Q. Have you known people to wash their hands on the shore? A. Yes. There is a rock shore here with a sandy beach. Any one wishing to wash their hands would go down there to wash their hands. It is only forty feet from the storehouse. A year ago we used to keep a bar of soap right there."

This evidence may prove a custom of the men to go to the beach, a safe and convenient place, to perform their ablutions, and equally confutes the fact that a single person was ever known to go to the slip for that purpose. The above evidence, accordingly, and it is all there is concerning this point, establishes beyond question that the decedent did not go to the slip in accordance with any "usual manner" or custom which was practiced by the employees or known to the employer.

Yet it is upon the assumed existence of this custom, as we interpret the second part of the chairman's finding, that he holds that the accident arose out of and was in the course of the employment. But this conclusion is unsupported by any evidence whatever.

It is claimed, however, regardless of any custom, that the judgment of the court should be affirmed upon the ground that the going to the slip was within or incidental to the employment of the decedent. As already appears, the evidence is convincing that no one was ever known to go to the slip to wash his hands. The reason is manifest,

The shore where the men were accustomed to go for that purpose was convenient, accessible and safe. On the other hand, the use of the slip for such purpose was inconvenient, unsuitable and dangerous, as shown, not only by the fact that the decedent met his death through that danger, but by all the evidence pertaining to that subject. Upon the question of danger in attempting a use of the slip for any purpose, Henry M. Chapman testified as follows: "Q. About how deep is the water there at the end of the slip at the high mark? A. I should say around 18 feet of water. Q. Whether or not you have noticed from time to time—whether or not you have noticed that the slip is slippery and slimy? A. Yes. Q. Explain to the Commissioner how it appeared? A. From the edge of the slip that went into the water up to where the water runs is about 18 inches—under that water it is just as slippery—it is like slime—it is like rocks in a brook under water—you know how slippery they are?"

Upon this subject John M. Morrison said that the morning of the accident the slip was "slippery, slimy."

The testimony amply shows that there was not only the beach that has been referred to, but ample toilet arrangements about the storehouse to furnish the decedent with every opportunity and facility necessary to enable him to do the very thing he is presumed to have gone to the slip to do, and on account of which he lost his life. Furthermore, the evidence shows that the decedent knew of the dangerous condition of the slip.

The evidence compels the inference that whereas the decedent had perfectly safe and ample facilities provided for washing his hands, he voluntarily went for that purpose to a place never intended to be used therefor. It was no part of his employment to go to this slip for the purpose specified. It was not made for that purpose. No one had ever been known to use it for that purpose. It held out no invitation express or implied to him or any one else to go there for the purpose of washing his hands. No custom to that effect ever existed. The negative of such a custom was proved. The employer therefore, could not be expected to anticipate that the decedent or any one else would go there for such a purpose. His employment, therefore, cannot be said to be the proximate cause of the accident. But it must be to make the employer liable. It is so held in *Westman's Case*, 118 Maine, 133: "It might with safety be said that in order for an accident to arise out of the employment, the employment must have

been the proximate cause of the accident." In *Saucier's Case*, 122 Maine, 325, it is said "The practical construction of the proximate cause has been said to be the one from which a man of ordinary experience and sagacity would foresee that the result might probably ensue. . . . . . . But if the injury results to the employee from the doing of something which the employment neither required nor expected, or in a place where his employment did not take him, it cannot be said to arise out of his employment."

We are of the opinion that the evidence proves that the decedent's death did result from the doing of something which his employment neither required nor expected him to do, and in a place where his employment did not take him, and to which his employers, if men of ordinary experience and sagacity, could not be expected to anticipate he would go, for the purpose of washing his hands.

*Appeal sustained.*
*Decree reversed.*
*Petition dismissed.*